United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Med-X Global, LLC, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-20722-Civ-Scola |
| | ) |
| SunMed International, LLC and others, Defendants. | ) |

### Order Granting the Defendant's Motion for Summary Judgment

This matter is before the Court on the Defendant SunMed International, LLC's ("SunMed") motion for summary judgment. (Mot., ECF No. 142.) The Plaintiff Med-X Global, LLC ("Med-X") filed a response opposing SunMed's motion (Resp., ECF No. 145), and SunMed replied (Reply, ECF No. 149). After careful consideration of the parties' arguments, the relevant legal authorities, and the record, the Court **grants** SunMed's motion for summary judgment. (**Mot., ECF No. 142**.)

### 1. Background

In January of 2018, L.H., a citizen of the United Kingdom, was travelling in Cancún, Mexico, when she suffered a medical emergency. (Def.'s SOF ¶¶ 10–11, ECF No. 141; Pl.'s Am. SOF ¶¶ 10–11, ECF No. 163.) L.H. had previously purchased a travel insurance policy from Union Reiseversicherung Aktiengesellschaft ("Union"), a German insurance company. (Def.'s SOF ¶¶ 4, 10; Pl.'s Am. SOF ¶¶ 4, 10.)

Union employed Travel Insurance Facilities, PLC ("TIF"), a travel insurance underwriter in the United Kingdom, to act as its representative. (Def.'s SOF ¶ 6; Pl.'s Am. SOF ¶ 6.) TIF, in turn, retained International West Indies Assistance, SàRL ("IWIA") as a medical assistance company, and IWIA retained the Defendant SunMed to assist IWIA in carrying out the duties assigned to it by TIF. (Def.'s SOF ¶¶ 9, 13–14; Pl.'s Am. SOF ¶¶ 9, 13–14.)[1]

---

[1] Where Med-X's response statement of facts claims that one of SunMed's well-supported assertions is "disputed," but fails to adequately support that claim with citations to contradictory evidence, or otherwise, the Court credits SunMed's assertion. For example, in these paragraphs, Med-X attempts to dispute SunMed's assertion that IWIA is a medical assistance company by arguing that SunMed does not have knowledge of the relationships between or roles of the original Defendants to this action (an argument that Med-X repeats throughout it response statement of facts). (*See* Pl.'s Am. SOF ¶ 9.) However, the evidentiary materials Med-X cites—*i.e.*, large portions of the deposition of SunMed's corporate representative, Dr. Kinyi Haber—do not support Med-X's argument. At most, Dr. Haber's testimony indicates that, at the time when SunMed was initially contacted by IWIA, SunMed

Specifically, IWIA retained SunMed to assist in finding an adequate medical facility to provide medical treatment to L.H. in Cancún, to issue a confirmation regarding L.H.'s insurance coverage, and to authorize specific medical treatments that L.H. required. (Def.'s SOF ¶¶ 13–14; Pl.'s Am. SOF ¶¶ 13–14.) The parties hotly dispute, however, whether SunMed acted as IWIA's disclosed agent and whether SunMed had any discretion over the insurance claim at issue.

When it became apparent that L.H.'s health required serious medical attention, IWIA emailed SunMed to ask if it could place a payment guarantee at either Amerimed or Victoria Hospital in Cancún, Mexico. (Def.'s SOF ¶ 17; Pl.'s Am. SOF ¶ 17.)[2] After further email exchanges, it was settled that L.H. should be transferred to Amerimed, and SunMed arranged and coordinated L.H.'s hospitalization at Amerimed. (Def.'s SOF ¶¶ 18–20; Pl.'s Am. SOF ¶¶ 18–20.)

On February 8, 2018, Amerimed emailed SunMed requesting that SunMed provide a "letter of guarantee" for L.H.'s treatment and inquiring as to the "maximum about covered by [L.H.'s] insurance." (Def.'s SOF ¶ 21; Pl.'s Am.

---

did not have information as to what other companies were involved with IWIA. (*See, e.g.*, K. Haber Dep. 31:21–32:6, ECF No. 145-2.)

[2] Previously, the Court granted SunMed's motion to strike Med-X's statement of opposing facts and additional facts, finding that Med-X's statement violated Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1 in numerous ways. (*See* ECF No. 159.) In its amended response statement of facts, Med-X for the first time includes numerous footnotes purportedly intended to document its objections to the exhibits provided in support of SunMed's statement of facts. These purported objections have not been raised adequately. In addition to being circumscribed to Med-X's footnotes, the purported objections do not include the specific grounds on which they are made. For example, Med-X repeatedly states that particular exhibits are "laced with authentication and/or hearsay" problems, without specifying what any of those problems are. (*See, e.g.*, Pl.'s Am. SOF n. 7–15.) And, because Med-X raises these purported objections at the last minute, only after the Court required that it file an amended statement of facts, SunMed has not had an opportunity to respond. These deficiencies suggest that the Court should simply disregard Med-X's purported objecions. Notwithstanding this, the Court notes that even if certain documents are not properly authenticated on summary judgment, courts may consider them if "given the nature of the challenged documents, . . . they could easily be authenticated and rendered admissible at trial." *See Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F. Supp. 2d 1249, 1255 (S.D. Fla. 2005). As to Med-X's references to hearsay, it is unclear to the Court that any of the referenced exhibits would qualify as hearsay, *i.e.*, as out of court statements brought in "to prove the truth of the matter asserted." *See* Fed. R. Evid. 801(c). Finally, Med-X also makes passing references to the "rule of completeness" that likewise fail to raise proper objections to SunMed's exhibits because Med-X does not purport to offer any other part of those exhibits or to explain why any such additional materials are necessary and relevant. *See United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011) (district court did not abuse its discretion in failing to admit alleged additional part of exhiits because, among other reasons, the objecting party did not suggest how the additional material would "qualify, explain, or place into context" the portion that was admitted into evidence).

SOF ¶ 21; Exh. D to Def.'s SOF, ECF No. 141-4.)³ The same day, SunMed issued a "guarantee of coverage" letter ("GOC Letter") to Amerimed. (Def.'s SOF ¶ 22; Pl.'s Am. SOF ¶ 22; GOC Letter, ECF No. 56-1.) The GOC Letter identifies IWIA as the "Insurance Company," and states, in relevant part:

> SunMed, Int. is the Third Party Administrator for IWIA. This fax represents a guarantee of coverage for the above patient. We confirm that the above patient is a carrier of a major medical policy, which includes benefits coverage for medical expenses incurred in a foreign country as follows:
> . . .
> All of the expenses generated during this medical process will be reimbursed in accordance to the existing contract with (SunMed International).

(GOC Letter, ECF No. 56-1.)

On February 9, 2018, Amerimed emailed SunMed requesting approval for the costs anticipated for L.H.'s treatment. (Def.'s SOF ¶ 23; Pl.'s Am. SOF ¶ 23; Exh. E to Def.'s SOF, ECF No. 141-5.) The next day, SunMed responded that it "ha[d] been informed that the surgery . . . ha[d] been authorized" and that it "w[ould] be sending [Amerimed] the GOP for the surgery shortly." (Def.'s SOF ¶ 24; Pl.'s Am. SOF ¶ 24; Exh. F to Def.'s SOF, ECF No. 141-6.) Amerimed emailed back expressing its appreciation that SunMed had "provided it with notice that the [surgery] was approved," and remitting an updated medical report and partial breakdown of costs. (Def.'s SOF ¶ 24; Pl.'s Am. SOF ¶ 24; Exh. F to Def.'s SOF, ECF No. 141-6.)

Despite the foregoing exchanges, however, Med-X is adamant that SunMed never disclosed it had anything other than absolute authority over L.H.'s claim. (Pl.'s Am. SOF ¶ 36; Med-X Aff. ¶¶ 5, 8–9, ECF No. 145-1.) Med-X asserts that, not only did SunMed fail to disclose it was acting on behalf of a principal, but that it held itself out during the claims process as being the final decision-maker in L.H.'s case. (Med-X Aff. ¶ 5, ECF No. 145-1 ("[B]ecause of the way the Claim process actually unfolded in the real world - SunMed was the only party during all material times that held itself out to (and conducted itself with) Med-X as the source for resolving the Claim concerning the subject hospitalization and related medical services.").)

L.H.'s surgery took place on February 13, 2018, and shortly thereafter Amerimed began demanding an initial payment from SunMed. (Def.'s SOF ¶¶ 25–26; Pl.'s Am. SOF ¶¶ 25–26; Exh. G to Def.'s SOF, ECF No. 141-7; Exh. H to Def.'s SOF, ECF No. 141-8.) On February 16, 2018, SunMed responded by

---

³ It appears that SunMed accidently skipped a letter when citing to various of the exhibits to its statement of facts. The Court has corrected this mistake in its own citations.

requesting the hospital's banking information and explaining that it was "still awaiting a response from [L.H.'s] primary insurance company regarding the first payment requested." (Def.'s SOF ¶ 27; Pl.'s Am. SOF ¶ 27; Exh. I to Def.'s SOF, ECF No. 141-9.) At some point in the ensuing days, however, SunMed began to express disagreement as to the amount being charged by Amerimed, and, in response, Amerimed attempted to circumvent SunMed by communicating with TIF directly. (Def.'s SOF ¶¶ 28–30; Pl.'s Am. SOF ¶¶ 28–30; Exh. J to Def.'s SOF, ECF No. 141-10; Exh. K to Def.'s SOF, ECF No. 141-11; Exh. L to Def.'s SOF, ECF No. 141-12.)

In early March 2018, Amerimed assigned the subject claim in its entirety to Med-X. (Def.'s SOF ¶ 31; Pl.'s Am. SOF ¶ 31; Exh. M to Def.'s SOF, ECF No. 141-13; Exh. N to Def.'s SOF, ECF No. 141-14; Second Am. Compl. ¶ 22, ECF No. 15.) Med-X, a medical billing agency, was retained by Amerimed to provide medical billing and payment services with respect to the treatments rendered to L.H. (Def.'s SOF ¶ 2; Pl.'s Am. SOF ¶ 2; Second Am. Compl. ¶ 2, ECF No. 15.) In the months that ensued, Med-X continued communicating with SunMed and TIF, but to no avail. (Def.'s SOF ¶¶ 32–35; Pl.'s Am. SOF ¶¶ 32–35; Exh. O to Def.'s SOF, ECF No. 141-15; Exh. P to Def.'s SOF, ECF No. 141-16.)

Med-X thus instituted the instant case to seek recovery for the full amount billed during L.H.'s stay at Amerimed. Med-X initially filed this action against all the entities potentially related to the dispute. (Second Am. Compl., ECF No. 15.) However, the Court dismissed Med-X's claims against TIF for lack of personal jurisdiction (ECF No. 63), and Med-X voluntarily dismissed its claims against all the other entities (ECF Nos. 37, 51, 52). Thus, only the claims against SunMed remain pending.

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

At the heart of the parties' dispute is whether SunMed was IWIA's agent, the scope of SunMed's authority over L.H.'s claim, and whether SunMed opened itself up to liability through its actions. In its motion, SunMed argues that summary judgment should be granted in its favor because the evidence shows it was an agent of disclosed principal IWIA, and, thus, cannot be held liable for the insurer's denial of full coverage.[4] In addition, SunMed argues that it never expressly agreed to be bound by the terms of the insurance policy and that its conduct did not otherwise indicate an intent to be so bound. In response, Med-X contends that SunMed did not simply act as IWIA's agent, but rather made discretionary coverage decisions, and that even if it were an agent, SunMed failed to disclose that information to Med-X throughout most of the claims process.

---

[4] The Court previously denied SunMed's motion for summary judgment as premature on two prior occasions. (*See* ECF Nos. 97, 135.)

showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

At the heart of the parties' dispute is whether SunMed was IWIA's agent, the scope of SunMed's authority over L.H.'s claim, and whether SunMed opened itself up to liability through its actions. In its motion, SunMed argues that summary judgment should be granted in its favor because the evidence shows it was an agent of disclosed principal IWIA, and, thus, cannot be held liable for the insurer's denial of full coverage.[4] In addition, SunMed argues that it never expressly agreed to be bound by the terms of the insurance policy and that its conduct did not otherwise indicate an intent to be so bound. In response, Med-X contends that SunMed did not simply act as IWIA's agent, but rather made discretionary coverage decisions, and that even if it were an agent, SunMed failed to disclose that information to Med-X throughout most of the claims process.

---

[4] The Court previously denied SunMed's motion for summary judgment as premature on two prior occasions. (*See* ECF Nos. 97, 135.)

As Med-X brought this case pursuant to the Court's diversity jurisdiction, Florida law applies. "In Florida, '[t]he law is well settled that an agent is not personally liable for the contract debts of a disclosed principal, absent an express agreement to the contrary.'" *Validsa, Inc. v. PDVSA Servs.*, 424 F. App'x 862, 874 (11th Cir. 2011) (quoting *Kanov v. Bitz*, 660 So. 2d 1165, 1165–66 (Fla. 3d DCA 1995)); *see also Andrew H. Boros, P.A. v. Arnold P. Carter, M.D., P.A.*, 537 So. 2d 1134, 1135 (Fla. 3d DCA 1989) (same). As long as "the contracting party knows the identity of the principal, the principal is deemed disclosed." *Validsa, Inc.*, 424 F. App'x at 874 (quoting *Philip Schwartz, Inc. v. Gold Coast Graphics, Inc.*, 623 So. 2d 819, 820 (Fla. 4th DCA 1993)); *see also Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002) (same). Moreover, while, in principle, "an agent may be held liable when circumstances show that personal responsibility was intended to be incurred," Florida "courts rarely find liability in this situation." *Validsa, Inc.*, 424 F. App'x at 874 (cleaned up).

Here, SunMed has provided more than enough evidence that Amerimed, and later Med-X, had full knowledge that SunMed was acting as an agent on behalf of its principal, IWIA, during all relevant times. Perhaps most importantly, the February 8, 2021, GOC Letter unequivocally explains that SunMed was acting as "the Third Party Administrator for IWIA" and identifies IWIA as the "Insurance Company." (GOC Letter, ECF No. 56-1.) As its title indicates, the GOC Letter was presented to Amerimed as a guarantee that L.H. was covered by an insurance policy and, to that effect, confirms only that L.H. "is a carrier of a major medical policy, which includes benefits coverage for medical expenses incurred in a foreign country." (*Id.*) Indeed, it is telling that Med-X's operative complaint does not mention the GOC Letter at all, but, instead, purports to base its single breach of contract claim on the insurance policy that L.H. purchased from Union. (*See* Second Am. Compl. ¶¶ 12, 27, ECF No. 15.)

In addition, SunMed's disclosure of the nature of its role as an agent for IWIA is confirmed in the email communications exchanged by the parties from the outset of L.H.'s hospitalization with Amerimed. These exchanges show that Amerimed understood that SunMed was acting on behalf of another entity and, significantly, that SunMed required approval from that other entity for decisions pertaining to L.H.'s treatment. As just one example, on February 10, 2018, when SunMed notified Amerimed via email that the preliminary costs for L.H.'s treatmenet had been approved, SunMed wrote that it "ha[d] *been informed* that the surgery . . . ha[d] been authorized." (*See* Exh. F to Def.'s SOF, ECF No. 141-6 (emphasis added).) And, in response, Amerimed expressed its appreciation that SunMed had "provided it with notice that the [surgery] was

approved," thus indicating its understanding that the approval was coming from elsewhere. (*See id.*)

Med-X does not provide any evidence that creates a genuine issue of fact as to whether SunMed properly disclosed that it was acting as an agent of IWIA. The only evidence that Med-X cites on this point comes from the affidavit of one of its principals, James Loures, Jr., filed in support of Med-X's opposition to summary judgment. (*See* Med-X Aff., ECF No. 145-1.) Loures's affidavit states repeatedly that "at no time during the Claim process . . . did SunMed disclose to Med-X that SunMed was an agent of purported principal IWIA (or anybody else, for that matter)[.]" (*See id.* ¶¶ 5, 8–9.) However, such conclusory denials are insufficient to create a genuine issue of fact. This is because while "self-serving statements that a litigant sets forth in an affidavit can defeat summary judgment[,]" the statements must include "specific facts" and not merely "conclusory assertion[s]." *See Walace v. Cousins*, 783 F. App'x 910, 913 (11th Cir. 2019) (cleaned up).

Specifically, while Loures's affidavit repeatedly denies that Med-X ever knew of SunMed's true relationship with IWIA, these denials are all conclusory in nature, as the affidavit fails to engage with any of the facts evidencing SunMed's disclosure of IWIA during the time of L.H.'s initial hosptilzation with Amerimed and thereafter. For instance, although the affidavit briefly mentions the GOC Letter, it completely ignores the fact that the GOC Letter explicitly identifies SunMed as the "Third Party Administrator for IWIA." (*See* Med-X Aff. ¶ 7, ECF No. 145-1.) Similarly, the affidavit also ignores other key communications between the parties, such as the initial briefing email between AmeriMed and Med-X where the former explains to Med-X that SunMed's request to transfer L.H. was made "*on behalf of* Top Dog insurance located in England." (*See* Exh. M to Def.'s SOF, ECF No. 141-13 (emphasis added).) Moreover, Loures's affidavit fails to otherwise cite to specific facts to support its claim that SunMed was acting as the sole claims decision maker, such as particular statements that SunMed made or instances in which it purportedly acted unilaterly, without input from its principal. In short, Loures's conclusory affidavit does not create an issue of fact that would defeat summary judgment in favor of SunMed. *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

Furthermore, none of the facts that Med-X does highlight in its opposition to SunMed's motion require a different conclusion, as none of those facts undermine SunMed's arguments that it acted as an agent of disclosed principal IWIA and that it never entered into an express agreement to assume responsibility for L.H.'s insurance payments. The Court has reviewed in detail

all portions of the deposition of Dr. Kinyi Haber, SunMed's corporate representative, that were cited by Med-X and concludes that Dr. Haber's testimony does not undermine SunMed's arguments. For instance, Med-X cites various portions of Dr. Haber's deposition in support of the point that SunMed was "**the** Claim decision-maker" (*see* Resp. at 8, ECF No. 145 (emphasis in original)), but Dr. Haber is consistent throughout her deposition that all of SunMed's actions were taking at the direction, and subject to the control, of IWIA. (*See, e.g.*, K. Haber Dep. 38:12-19, ECF No. 145-2 ("The instruction that they give us, we take care of that. . . . We are a third-party administrator. An assistant company. So, we have to wait for them to analyze. And let us know how to proceed.").)

Similarly, Med-X makes much of the language in the GOC Letter stating that "[a]ll of the expenses generated during this medical process will be reimbursed in accordance to the existing contract with (SunMed International)." (*See* Resp. at 9, ECF No. 145.) Presumably, Med-X's intention is to argue that such language shows SunMed was responsible for determining treatment pricing and, accordingly, reimbursement with Amerimed. But Med-X itself seems to admit that such a contract does not actually exist, acknowledging in its response that the contract has not surfaced throughout the litigation. (*See id.*) Moreover, Dr. Haber testified that the language resulted from using a "standard form" and that, in fact, "there [wa]s no contract between Sunmed and Amerimed." (*See* K. Haber Dep. 81:21:25, ECF No. 145-2.) And if such a contract did exist, Amerimed, and then Med-X, would necessarily have had a copy of it as well.

In summary, the undisputed facts establish that SunMed was acting in the capacity of an agent for a disclosed principal, and that Amerimed, and then Med-X, had knowledge of this at all material times. In addition, Med-X has not provided any evidence to establish that SunMed otherwise conducted itself in such a way as to bind itself to its principal's obligations under the insurance policy with L.H. Therefore, because the insurance contract cannot be enforced against SunMed, Med-X cannot succeed on its single breach of contract claim against SunMed.

### 4. Conclusion

Accordingly, for the reasons set forth above, the Court **grants** SunMed's motion for summary judgment. (**Mot., ECF No. 142**.) The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** at Miami, Florida on October 17, 2023.

_____
Robert N. Scola, Jr.
United States District Judge